UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 3:22CR226 (SVN) |
| | : | |
| MARK CARBUTTI | : | May 1, 2023 |
| | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States submits this memorandum in aid of the sentencing of Mark Carbutti in response to the defendant's previously filed memorandum. The defendant's sentencing is presently scheduled for Wednesday, May 17, 2023, at 2 pm.

The defendant previously pled guilty on December 1, 2022, to a one-count Information charging him with tax evasion of payment in violation of 26 U.S.C. Section 7201. The parties and the Probation Office in the PSR have proposed the following Guidelines calculation:

The defendant's base offense level under U.S.S.G. §§ 2T1.1 and 2T4.1 is 20, based on the approximate Guidelines tax loss of $750,180, which is between $550,000 and $1,500,000, as "tax loss" is defined in evasion of payment cases to include unpaid taxes, penalties and interest. *See* Attachment A (tax loss calculation); U.S.S.G. § 2T1.1 App. Note 1. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 17. The defendant falls within Criminal History Category I. A total offense level 17 at a Criminal History Category I results in a Guidelines sentencing range of 24 to 30 months of imprisonment (sentencing table) and a fine range of $10,000 to $95,000 (U.S.S.G. § 5E1.2(c)(3)). The defendant is also subject to a supervised release term of one to three years. U.S.S.G. § 5D1.2.

The defendant has agreed to pay restitution in the amount of at least $750,180, which is the amount identified as the Guidelines loss. For the reasons discussed below, the Government submits that a sentence of approximately a year and a half, within a Guidelines range of 18-24 months, is appropriate to reflect the significant evasive steps taken by the defendant for a number of years to evade the payment of his significant tax obligations.

The defense has argued for a lower sentence for various reasons, including that 1) the defendant, an attorney, was buffeted by various personal issues that purportedly explained his multi-year acts of evasion and underpayment of hundreds of thousands of monies that he owed the IRS; 2) the Guidelines Loss provision used for evasion of payment offenses is unduly onerous; and 3) average/median Guidelines sentences for arguably similar fact patterns are 16 months, even though the Guidelines losses at issue here or other factors might be markedly different that factors present in those "average" cases. These arguments deserve short shrift.

I.     Factual Background

At all relevant times, the defendant was a resident of Madison, Connecticut, and a practicing attorney in Wallingford, Connecticut, specializing in personal injury law. In each of the years he filed federal income tax returns, the defendant reported his income from his legal practice on a Form Schedule C appended to his Form 1040 U.S. Individual Income Tax Return ("Form 1040") and reported his personal taxes due and owing on the Form 1040.

From 2013 through 2017, Carbutti filed federal Forms 1040 and reported approximately $585,025 in income taxes owed to the Internal Revenue Service ("IRS") as a result of his legal practice and certain rental income. During that time period and thereafter, Carbutti made only limited payments of his taxes due and owing, and interest and penalties accrued as a result of non-payment.

Between October 2014 and July 2016, unable to collect monies due from Carbutti, the IRS levied certain personal bank accounts used by him. Learning of the IRS levies, the defendant closed those accounts and took steps to evade the payment of taxes, interest, and penalties, by writing checks from his law firm's operating account payable to his paralegal, which subsequently were converted to cash and deposited into the bank accounts of certain limited liability companies ("LLCs") that the defendant previously had created to own distinct real estate holdings. The defendant also took substantial additional cash withdrawals from his law firm bank accounts and redeposited the monies in various bank accounts held by the real estate LLCs. The defendant began to pay personal expenses from various of the LLC bank accounts, including tens of thousands of dollars for a range of expenditures, such as gambling at casinos, restaurants, and vacations.

Between December 2014 and May 2019, Carbutti received at least twelve notices from the IRS advising him of his tax amounts due, with instructions on how to pay his overdue taxes. Rather than paying the taxes, penalties, and interest due and owing, the defendant paid tens of thousands of dollars toward personal expenses, as noted above. By way of example of affirmative acts of evasion:

a) From 2013 through 2019, Carbutti caused the payment of *approximately $600,420 of his own personal expenses* directly from his real estate LLC bank accounts, rather than from any personal bank account.

b) From September 2017 until October 2019, the defendant *caused 58 checks totaling approximately $118,255* to be written to his paralegal that subsequently were cashed and deposited into the bank accounts of Carbutti-controlled LLCs, which were then used for personal expenses.

c)   After receiving a check in November 2017 for $24,648 from the sale of real estate and also receiving a notice from the IRS at that time reminding Carbutti of tax due and owing, Carbutti, on November 30, 2017, deposited the above-referenced check into the K Grace LLC bank account and, the next day, purchased a bank check from that account payable to Imports Unlimited for the purchase of a BMW.

The parties have agreed to the Guidelines Tax Loss, totaling $750,180, as set forth in the table below for the 2013-2019. The defendant does not dispute evading payment of $750,180 in taxes, penalties and interest, but requested that the offense conduct reflect that he did not realize the scope of the underpayment for 2013 until as late as 2017. The originally filed Form 1040 return for 2013 (filed on 11/17/2014) listed a tax due and owing of $117,680. An amended form 1040 return for 2013 (filed on 12/22/2014) claimed the tax payable was, in fact, $39,184 less than reported on the original return. This amended 1040 return triggered the civil audit. The audit resulted in changes to the tax loss figure, and the figures were accepted as accurate by the defendant on December 22, 2017. The audit actually determined that the tax due and owing for the 2013 tax year increased from the originally reported $117,680 to $205,772. As reflected in the table, since the filing of the first form 1040 return for 2013 in November 2014, the defendant paid only $33,087 toward the outstanding taxes due for the 2013 tax year.

| Tax Year | Tax Due | Tax Paid | Interest | Penalty | Other | Total Loss |
|---|---|---|---|---|---|---|
| 2013 | $205,772.00 | ($33,087.87) | $34,394.40 | $68,591.21 | $226.00 | $275,895.74 |
| 2014 | $50,937.00 | ($1,103.00) | $8,472.64 | $13,351.50 | $226.00 | $71,884.14 |
| 2015 | $114,517.00 | ($431.00) | $13,924.92 | $29,428.29 | | $157,439.21 |
| 2016 | $83,170.00 | | | $22,780.50 | | $105,950.50 |
| 2017 | $130,629.00 | ($1,071.00) | $3,927.07 | $5,405.32 | $120.00 | $139,010.39 |
| 2018 | **No Return Filed** | | | | | |
| 2019 | **No Return Filed** | | | | | |
| **Totals** | $585,025.00 | ($35,692.87) | $60,719.03 | $139,556.82 | $572.00 | $750,179.98 |
| Total Unpaid Tax | | $549,332.13 | | | | |
| **Total Unpaid Tax, Penalties, Interest** | | | | | | **$750,180** |

II.  The Guidelines Calculation

The parties do not disagree that the defendant evaded payment of approximately $750,000 in taxes, penalties and interest during a period that spanned from 2013 through 2017 and failed to file returns for 2018 and 2019. The significant nature of the defendant's tax noncompliance over multiple years will likely drive the appropriate sentence rather than a more formulaic Guidelines range. Nonetheless, because the Guidelines calculation is a recognized sentencing factor, the defendant advances arguments to tweak the relevant calculation.

*First*, the defendant argues for a two-point sentence reduction from the PSR Guidelines calculation because the defendant is a "zero-point offender." Def. Mem. at 14. Despite the multiple years of criminal conduct, including literally hundreds of evasive acts, the defendant would be entitled to such a reduction under the proposed Sentencing Commission amendments. Given the likelihood that these amendments will become law, the Government takes no position

on the proposed departure/variance to effectuate the anticipated applicable new Guidelines range. With a two level downward reduction to 15, whether by a Guidelines reduction/departure or variance, the defendant would be subject to a Guidelines sentencing range of 18-24 months incarceration.[1]

*Second,* the defendant challenges that the Guidelines consider the entire amount that the defendant sought to evade in payment – unpaid taxes, interest and penalties – as Tax Loss in determining the appropriate Guidelines offense level. Def. Mem. at 15. Defense counsel seeks to contrast this evasion-of-payment defendant with a defendant who engaged in evasion of assessment, that is, lied about the accuracy of his returns causing tax loss where any subsequent penalties and interest *after* the evasion of assessment are not included in Tax Loss under the Guidelines. By not including penalties and interest in Tax Loss with the second defendant, that defendant may face a potentially lower offense level. But the logic of the Guidelines is sound. With the evasion of payment case, the defendant is making a choice to evade payment of his known accruing obligations to the IRS in the form of the original unpaid taxes, plus accruing

---

[1] Part B of the proposed amendment sets forth a new Chapter Four guideline at §4C1.1 (Adjustment for Certain Zero-Point Offenders). New §4C1.1 would provide a decrease of 2 levels from the offense level determined under Chapters Two and Three if the defendant meets all of the following criteria: (1) the defendant did not receive any criminal history points from Chapter Four, Part A; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848. *See* Sentencing Commission Website, Amendments.

penalties and interest. In contrast, with the evasion-of-assessment case, the defendant makes the choice to avoid payment of taxes as of the date of the tax filing, before interest and penalties, but how long the defendant will get away with his crime remains speculative and thus not included in Tax Loss.

While the Government submits that a strong policy argument could be made *to include* penalties and interest in determining tax loss in an evasion-of-assessment case where the fraud remains hidden for some time, that does not diminish the wisdom of using the total sums the defendant actually evades paying as Tax Loss in an evasion-of-payment case – those are the non-speculative amounts the defendant owed the IRS that he took steps to evade payment. Further, in this case, had the defendant evaded reporting all the taxes due from 2013 through 2019 (which were reported to the IRS as $585,025), **not including** whatever additional taxes he failed to report, if any, for tax years 2018 or 2019, where he failed to file returns, the tax losses would have fallen within the very same Guidelines loss range of $550,000 to $1.5 million applicable to this evasion of payment case.

In addition, an argument certainly can be advanced that someone in an evasion-of-assessment case who lies about taxes due and owing on a given day when filing a false return may be less culpable that this defendant who for a multi-year period took methodical steps *to evade* the payment of taxes, penalties and interest due and owing. And despite the defense counsel's effort to claim this defendant did not "lie, cheat or hide," Def. Mem. at 15, that is exactly what he did in *evading* the payment of taxes, as described above, where the defendant closed his personal bank accounts and paid approximately $600,420 of personal expenses directly from his real estate LLC bank accounts and where this defendant caused 58 checks

7

totaling approximately $118,255 to be written to his paralegal that subsequently were cashed and deposited into the bank accounts of Carbutti-controlled LLCs and used for personal expenses.

    III.    The Court Is Fully Able to Balance the Section 3353 Factors.

In formulating the appropriate sentence, the Court will obviously evaluate the various factors set forth in Title 18 U.S.C. § 3553(a). Virtually all factors favor a significant sentence more in line with an 18-24 month sentencing range than the year and a day advocated by defense counsel.

**The nature and circumstances of the offense**, as discussed at length in the PSR, suggest that a significant sentence is warranted. As to the **history and characteristics of the defendant**, the defendant paints a picture of himself in the PSR and psychiatric report as someone sleepwalking through the charged years. He explains the time as a confluence of the collapse of his marriage and other related events. He spends little time discussing everything else. Yet during the 2013-2017 time period, the defendant was able to perform as a highly functioning, successful attorney. As reflected on the Schedule C of his filed tax returns, during that period he brought in each year significant gross revenues, which over the five year period from 2013-2017 totaled $3.9 million:

| SCHEDULE C | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|
| Gross Receipts | $1,445,703 | $458,995 | $678,254 | $524,929 | $773,338 |
| Returns and Allowances | ($96,000) | $0 | $0 | $0 | $0 |
| Cost of Goods Sold | ($631,321) | $0 | $0 | $0 | $0 |
| Other Income | $0 | $0 | $0 | $17,273 | $0 |
| Gross Income | $718,382 | $458,995 | $678,254 | $542,202 | $773,338 |

In other words, the defendant was able to run a law practice and also take the numerous steps to evade paying over $750,000 in taxes, penalties and interest, despite the IRS sending frequent notices of liability and dealing with everything else in his life. Nor does the defendant suggest

8

that the defendant evaded payment of taxes in order to serve some charitable purpose or serve some greater good. Instead, the record reflects that monies went to range of personal expenditures to support his life, including tens of thousands of dollars for a range of expenditures, such as gambling at casinos, restaurants, and vacations.

**The sentence need also reflect the seriousness offense**. Again, this was muti-year effort to evade payment of over $750,000 in monies owed the IRS. This was not an aberrant crime committed on one day in one year, but a deliberate effort over at least five years, and the sentence should so reflect. The sentence need be sufficiently strong to send an important deterrent message. The Government hopes that, whatever the sentence, there will be no need to protect the IRS or the public from further crimes by the defendant, but the issue of general deterrence in a tax case remains paramount. The defendant notes that it is "impossible to gauge" to what extent deterrence will impact others in the Connecticut and New England area. Def. Mem. at 16. That said, the defense acknowledges that a sentence of incarceration "can have some effect on some people." *Id.* As the Second Circuit has explained, general deterrence is "especially important … in criminal taxes offenses, as criminal tax prosecutions are relatively rare." *United States v. Park*, 758 F.3d 193, 201 (2d Cir. 2014) (per curiam); *see also United States v. Burgos*, 276 F.3d 1284, 1289 n.6 (11th Cir. 2001) (observing that "[f]or a judge sentencing a defendant convicted of tax evasion, the chief concern may be general deterrence"); U.S.S.G. Ch. 2, Pt. T, introductory cmt. ("Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators."). Given this important policy consideration, this Court's

sentence must show would-be tax evaders that they will be prosecuted and, if convicted, face consequences that will make them think twice of engaging—or at least prolonging—such conduct, as the defendant did here year after year. Here a meaningful period of incarceration is warranted to send the appropriate deterrent message to attorneys and other business persons around the state of the significant risks his seeking to evade the payment of taxes due.

**The need for unwarranted sentence disparities.** The defendant notes, citing Paragraphs 77 and 78 of the PSR, that the average and median sentence length of similar tax cases is 16 months and argues that this should be a consideration for a lower sentence. Def. Mem. at 16. Of course, the PSR is also careful to note that the data point is not the properly calculated Guidelines range and does not reflect the Commission's recommendation regarding the appropriate sentence – which is more obviously captured by the Guidelines themselves. The PSR only provided the average/mean sentence, suggesting that in fact half the sentences *exceed* the 16 month mean, with no guidance as to how high a sentence might be appropriate for this caser where the Tax Loss figure is approximately $750,000, far above the bottom of the range of $550,000; where evasive acts took place over multiple years; and where the defendant is an attorney and plainly knew better.

Giving meaningful reliance on the average and median prison sentences from the JSIN statistics included in the PSR runs counter to the purpose of Guidelines themselves. *See United States v. Willingham*, 497 F.3d 541, 544 (5th Cir. 2007) (rejecting the use of national averages in assessing disparity and finding that "averages of sentences that provide no details underlying the sentences are unreliable to determine unwarranted disparity because they do not reflect the enhancements or adjustments for the aggravating or mitigating factors that distinguish individual cases"). The Court must consider the value of such data carefully as such averages

"disregard individual circumstances and only reflect a broad grouping of sentences imposed on a broad grouping of criminal defendants; consequently, they are basically meaningless in considering whether a disparity with respect to a particular defendant is warranted or unwarranted." *Id.* at 544-45; *see also United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009); *United States v. Rivera-Santana*, 668 F.3d 95, 106 (4th Cir. 2012) ("Courts have repeatedly made clear that comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized or because some defendants possess, as here, a demonstrated propensity for criminal activity that is almost unique in its dimensions."). Indeed, the Second Circuit has explained that not only did the Sentencing Commission statistics not account for the individual characteristics of the offender and the crime, but "more importantly, 'a reviewing court's concern about unwarranted disparities is at a minimum when a sentence is within the Guidelines range.'" *Irving*, 554 F.3d at 76 (quoting *Willingham*, 497 F.3d at 545). After all, the "'avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.'" *Irving*, 554 F.3d at 76 (quoting *Gall*, 562 U.S. at 54). Where "'the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.'" *Id*. (quoting *Gall*, 562 U.S. at 54). By asking this Court to consider a data set of sentencing statistics (or a handful of local tax sentences), the defendant is in effect asking the Court to do something the Second Circuit has discouraged. "It cannot be that a judge must act as social scientist and assess nationwide trends in sentencing with each new defendant in effect, intuiting Guidelines revisions on an interim basis as a proxy for the Sentencing Commission. . . ." *United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007) (abrogated on other grounds by *Kimbrough v. United States*, 552 U.S. 85 (2007)).

Instead, the Second Circuit has held that "the mandate to take into account nationwide disparities under § 3553(a)(6), as distinct from the need to give due weight to the Guidelines under § 3553(a)(4), is modest." *Id*.  In sum, the data point provided by the PSR has little use in this case and does not undercut the appropriateness of a sentence within an 18-24 month range.

**The need to provide restitution.**   This factor remains in equipoise.  It appears that the defendant has moved in the direction of providing some restitution to the IRS after satisfying any obligations to his former clients and to experts retained in those cases.  Any limited delay caused by a meaningful period of incarceration as called for by the Guidelines would not appear to materially impede the defendant's ability to make restitution to the IRS.

CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court balance the various factors under Section 3553(a) and impose a Guidelines sentence consistent with the discussion above.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/Christopher W. Schmeisser*

CHRISTOPHER W. SCHMEISSER
ASSISTANT U.S. ATTORNEY
Federal Bar No. ct14806
christopher.schmeisser@usdoj.gov
157 Church Street, 25TH Floor
New Haven, CT  06510
Tel.: (203) 821-3700
Fax: (203) 773-5377

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that on May 1, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. The foregoing has also been sent by email to:

Kelly Gandolfi
Ryan Togninalli
U.S. Probation Officers
District of Connecticut
450 Main Street, Suite 735
Hartford, CT 06103

                                                */s/Christopher W. Schmeisser*
                                                Christopher W. Schmeisser